**WOODS, Housing Expediter, v. TURNER et ux.**

**No. 3734.**

United States Court of Appeals
Tenth Circuit.

Jan. 27, 1949.

314

Nathan Siegel, of Washington, D.C. (Ed Dupree, Hugo V. Prucha and William A. Moran, all of Washington, D. C., on the brief), for appellant.

David J. Wilson, of Ogden, Utah, for appellee.

Before PHILLIPS, Chief Judge, and BRAT·T O N and H U X M A N, Circuit Judges.

HUXMAN, Circuit Judge.

This action was instituted in the United States District Court for the District of Utah by appellant, Tighe Woods, Housing Expediter of the Office of Housing Expediter against appellees, David Turner and Mrs. David Turner, charging them with violations of the Rent Regulation for Housing, (8 Fed.Reg. 7322), and Emergency Price Control Act of 1942, as amended and extended, 50 U.S.C.A.Appendix, § 925(a), in that they .received rents for housing accommodations in excess of the maximum rents provided therefor by the applicable regulations.

The complaint alleged that three housing accommodations were involved. These may be designated as, first, rear 588, .22nd Street; second, rear apartment 550, 22nd Street; and third, West Side Duplex 558, 22nd Street, all in Ogden, Utah. It was alleged that the maximum rent established for these housing accommodations under the act and the applicable rent regulation for the period from June 17, 1945, to June 11, 1947, was as follows: For apartment 1, $18.75; for apartment 2, $15.75; and for apartment 3, $15.75; and that the defendants in each case compelled the tenants to rent a plot of land together with the housing accommodations for which an additional sum was charged, as follows: For

apartment 1, $12.00; for apartment 2, $14.75; and for apartment 3, $10.00, and that by reason of such unlawful charge, the defendants exacted and received from the tenants of the three housing accommodations rent in excess of the maximum rent provided by the regulation in the total sum of $875.50. The prayer of the complaint was for the judgment of the trial court requiring the defendants to pay to each of the tenants of the three housing units that part of the $875.50 due to each of them as set out in the complaint.

The cause was tried to the court. In substance, the trial court found that the accommodations were listed by the defendants in the amounts set out above and were leased to the three named tenants at such rental; that the additional plots of ground were also rented to the tenants of the three rental accommodations for the amounts previously stated; that the garden plots were not intended by defendants to be included in the registration, were not included therein, and formed no part of the housing accommodations covered by the registration. From this the trial court concluded, as a matter of law, that the defendants at no time demanded or received any rents for any of the housing accommodations described in plaintiff's complaint in excess of the maximum rent provided for in the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq.

The trial court did not make a specific finding as to whether or not defendants required the tenants to rent the garden plots as a condition to their renting the housing accommodations. The absence of such a finding is the equivalent of a finding thereon against plaintiff since he had the burden of establishing that the tenants were required to rent such lots as a part of the rental of the housing accommodations.[1]

One of the houses was rented to people referred to as the Walkers. Concerning the transaction with them, Turner himself testified as follows: "A. Well, he come up there and said he wanted the place. He said they were stranded for a place. I said, 'I have a place that a man had down there that has moved out and he had the ground with it and as long as the O.P.A. is in effect I am not going to try to change my setup. I have rented it now for these others, the ground and the house together, and I am going to continue to rent it that way.' I said, 'If you want it with that proposition you can either take it or leave it; it makes no difference to me.' He says, 'I want the house.' I said, 'Well if you take it, I want you to farm the ground too I want you to do something with it.'" Walker, according to the written lease, paid $18.75 for the house and $12 for the garden tract. The defendants admitted, and the court found that the tract was separate from the house. It thus conclusively appears that Walker was required to rent the tract in order to be permitted to rent the house.

John H. Lott and Dewey Thornton rented the other two properties in question. Without detailing the testimony as to them, it is clear that they likewise were required to rent the vacant tract in order to get the house and that unless they had agreed to do so they would have been unable to obtain the house. There is no evidence to the contrary.

Section 9 (a) of the Rent Regulation for Housing, 8 F.R. 7322, so far as material provides that, "The maximum rents and other requirements provided in this Regulation shall not be evaded by * * * or by tying agreements, or otherwise." This regulation does not materially differ in this respect from the one we had under consideration in Anchor Liquor Company v. United States, 10 Cir., 158 F.2d 221. That case concerned the sale of liquor by the bottle. The dealer handled both fifths and miniature bottles of liquor. Both had an established maximum price at which they could be sold lawfully under the Price Control Act. The dealer in that case would sell a case of fifths only on condition that the purchaser also bought a quantity of miniature bottles, both of which were sold at not more than the lawful maximum

---

[1] Walling v. Plymouth Mfg. Corp., 7 Cir., 139 F.2d 178; Container Patents Corp. v. Stant, 7 Cir., 143 F.2d 170; Shapiro v. Rubens, 7 Cir., 166 F.2d 659; Sauder v. Dittmar, 10 Cir., 118 F.2d 524.

established price. We held that such sales violated the regulation prohibiting tying agreements and that the dealer accordingly was liable for the price charged for the miniature bottles of liquor. We held that by tying agreements was meant combination sales, or the sale of two or more commodities on condition that all must be taken or none would be sold, and that such sales constituted an evasion of the maximum price established by the regulation. We also pointed out that the fact that the additional commodity was sold at a fair and not at an artificial price did not keep the sale from being made under a "tying agreement" in violation of the regulation. See also Leibman v. Siegel, 7 Cir., —— F.2d——.

█ It is no doubt true, as argued by appellees, that the Act does not contemplate that agricultural land is to be included within the definition of "housing accommodations" so as to be controlled by the rent control office, but the statutory and regulatory provisions interdicting tying agreements would prevent the owner of agricultural land from tying it in with the rental of housing accommodations.

█ Appellees also seek to rely upon Section 1(c) of the Rent Regulation for Housing, Section 1388.1881, Chapter 12, 1944, which provides that, "The provision of any lease or other rental agreement shall remain in force pursuant to the terms thereof except insofar as those regulations are inconsistent with this regulation," to support the rental agreements. It is not necessary to determine whether the arrangement would be lawful, if these tenants had rented these joint accommodations under such a contract prior to the effective date of the act and had continued under such rental agreements thereafter, because these were new leases made after the effective date of the act and the provision quoted above applies, in any event, only to existing leases.

█ It appears conclusively from the undisputed evidence that all three tenants were compelled to rent the vacant ground in order to be able to rent the housing accommodations. Such agreements and arrangements constituted tying agreements

and were clear violations of the Act and the appropriate regulations promulgated thereunder, and the receipt of these additional sums constituted. receipt of rent in excess of the authorized maximum lawful rent.

The trial court, therefore, erred in concluding, as a matter of law, that appellees had not demanded or received any rent or rents for the housing accommodations in question in excess of the maximum rent provided by the Act of 1942, as amended.

The judgment is accordingly reversed and the cause is remanded with directions to enter judgment for appellant as prayed for in his complaint.