Bert **RUUD** and Emma **Ruud,** Appellants,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15546.**

United States Court of Appeals
Ninth Circuit.

March 18, 1958.

Holden, Holden & Kidwell, William S.
Holden, Idaho Falls, Idaho, for appellant.

Perry W. Morton, Asst. Atty. Gen.,
Roger P. Marquis, Elizabeth Dudley, At-
torneys, Department of Justice, Wash-
ington, D. C., Ben Peterson, U. S. Atty.,
Boise, Idaho, for appellee.

Before HEALY, POPE and FEE, Cir-
cuit Judges.

JAMES ALGER FEE, Circuit Judge.

An action for condemnation of three
parcels of land in Idaho belonging to ap-
pellants was brought by the government.
There is but one question of importance

raised. The trial court refused to allow certain farmers, who testified they were well acquainted with the parcels of land and that they knew the farming practices in the vicinity and the value of lands in the particular neighborhood, to give opinions either as to the highest and best use to which the parcels could be put on the date of taking or as to the fair market value of the lands involved in the action on the date of taking. The government objected to the evidence on the ground that the witnesses had not been qualified as experts on appraising real estate.

■ The court ruled that the particular witnesses could not give opinions on such subjects unless qualifications of such witnesses were shown in connection with making an appraisal of land. In other words, the trial court required every witness, before giving an opinion as to the highest and best use or the fair market value of the particular property in issue, to be qualified as an expert real estate appraiser. This was error.

■ A farmer, who knows the property, knows the farming practice in the vicinity and the values of land in the neighborhood, is competent to give such opinions.[1] The mere fact that he does not himself make land valuations or buy and sell lands as a business is not a disqualification.

It only remains for us to determine whether or not any prejudice to appellant appears from these rulings. Both the witnesses in question, Ellsworth and Smith, were farmers. Ellsworth was not permitted to state what, in his opinion, was "the highest and best use to which" the ranch "could be put." Smith was not permitted to state his opinion as to the highest and best use to which the land could be put. Further, the latter was prevented from giving his opinion of the fair market value of the property.

■ It must be remembered that an attempt had been made to qualify each of these witnesses as competent to give an opinion as to value and best use. If the court had gone no further than to say that neither had sufficient qualifications to testify, the ruling would have been within its discretion.[2] The circumstance which is most persuasive against appellant is that the trial judge offered, on the day when these witnesses first testified, to consider the offer of counsel for appellant to furnish citations with respect to the qualifications of each of such witnesses. At that time, Smith had testified and these opinions had been ruled out. Ellsworth was on the stand when the offer was made by counsel.

The entire colloquy is set out in the footnote.[3]

---

1. "It has often been held that farmers living in the vicinity of a farm whose value is in question, may testify as to its value * * *." Montana Railway Co. v. Warren, 137 U.S. 348, 354, 11 S.Ct. 96, 97, 34 L.Ed. 681.

2. "Value may be proved by the opinion of any witness who possesses sufficient knowledge on the subject * * * It is difficult to lay down any exact rule in respect to the amount of knowledge a witness must possess, and the determination of the matter rests largely in the discretion of the trial judge." Montana Railway Co. v. Warren, 137 U.S. 348, 353, 11 S.Ct. 96, 34 L.Ed. 681. See also Love v. United States, 8 Cir., 141 F.2d 981, 983, and cases there cited.

3. "Q. Now, as a result of your experience as a farmer and your knowledge of lands in the area of the Ruud ranch, and taking into consideration just what you did in connection with making your appraisal, do you have an opinion as to the highest and best use to which the Ruud home ranch, Tract Number 41, could be put March 4, 1955? A. Yes, sir.

"Q. Would you state to the jury just what that opinion is?

"Mr. Furey: Just a moment. I'll object to that question, Your Honor, on the grounds that this witness hasn't been qualified as an expert on appraising real estate.

"The Court: I'll have to sustain the objection, Mr. Holden.

"Mr. Holden: Your Honor, we aren't qualifying him as an expert, but as a man who has been engaged in farming over the years, sixty-some odd years, familiar with land values in Bonneville County, particularly in Swan Valley, Grand Valley and Alpine, and who has discussed values

The record is devoid of showing that appellant produced any such authorities. In fact, it is clearly shown that the question was never raised in any form again. Worth Smith testified as to the productivity of the land, soil conditions thereon, water supply and crops. Adjournment was taken. Court reconvened the next day. Smith continued with similar testimony. He was never asked the questions claimed to be crucial on this appeal. Immediately after he left the witness stand, Preston Ellsworth was recalled. He reiterated and enlarged upon his previous testimony as to soil conditions and crops. He testified that the principal crops in the area are alfalfa, wheat, barley and oats. He was not asked to give an opinion about anything.

There was no offer of proof as to either of these witnesses. While it cannot be said that the failure to make an offer of proof is always fatal, in this situation appellant lulled the trial court into inaction. It was incumbent upon him to raise the point in such a way that the trial judge knew that his ruling was definitive and that appellant had not waived the point.

There was a real reason why appellant did not go further. The testimony was purely cumulative. Under the conditions, the trial judge could as a matter of administrative convenience have refused to have further opinions as to highest and best use or fair market value. Such a ruling would have been sustained.

The government called three witnesses as to "highest and best use" and as to fair market value. Defendant called four who were permitted to testify on these subjects and, in addition, Ellsworth and Smith, who were not. If appellant had asked for a pretrial conference, it is probable the court would have limited the number of experts to three on a side.[4] And the judge might have placed that same limitation after the United States had called three witnesses only.[5] Instead, the trial court allowed appellant four and refused to hear opinion testi-

---

with farmers and who has checked production of crops in the area and one familiar with valuations.

"The Court: I can't change my ruling unless you can show qualifications in connection with making an appraisal of land.

"Mr. Holden: Your Honor, I would be very happy to furnish—I don't have it right here—I would be very happy to furnish citations with respect to qualifying one familiar with lands in the area, one who lives in the area, and the question would be with respect to where he might reside with reference to this ranch.

"The Court: Well, during the evening, if you can show me .where the Court is wrong, I will be very glad to change my ruling, but I will have to sustain the objection now the way I understand the law.

"Mr. Holden: Then may we reserve the right?

"The Court: Yes, you may.

"Mr. Holden: That is all for the moment.

"The Court: Call your next witness.

"D. Worth Smith called as a witness by the defendant, having been first duly sworn, testifies as follows:

"Direct Examination

"By Mr. Holden:

"Mr. Holden: Now, Your Honor, with respect to Mr. Smith, Mr. Smith lives right across from the Ruud ranch, and counsel, and has lived there for some forty years. He will testify that he is familiar with land values, ranch land, and those values in the area. Now, we don't intend to qualify him as an expert appraiser.

"The Court: I would have to make the same ruling.

"Mr. Holden: And he is familiar with productivity of the soil in the area—

"The Court: —Oh, well, I will let him testify as to all those matters. If you wish to question him with regard to other things, the soil and things of those kind.

"Mr. Holden: I'll interrogate him up to that point if I may. On the other point I would use the same authorities as on the other witness."

4. See Rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A.

5. "There can be no doubt of the power of the trial court, in the exercise of a sound and reasonable judicial discretion, to limit the number of expert witnesses to the issue of value." Chapman v. United States, 10 Cir., 169 F.2d 641, 642, certiorari denied 335 U.S. 860, 69 S.Ct. 134, 93 L.Ed. 406.

mony from the two remaining, as has been noted.[6]

There is another method of determining that the opinions of the two additional witnesses would not have affected the result. The opinion of values to which each witness testified is set out below:

Witnesses of government:

| | |
|---|---|
| Dick | $165,769.90 |
| Gourley | 166,950.00 |
| Newell | 171,400.00 |

Witnesses of appellant:

| | |
|---|---|
| Groberg | $249,350.00 |
| Cook | 255,460.25 |
| Naegle | 252,503.00 |
| Ruud | 299,810.00 |

It is obvious that further opinions would not have changed the verdict.

■ But appellant claims that, since Newell, a government witness, was a farmer and his figure of value, $171,400.-00, was accepted by the jury as a basis for the verdict, appellant was entitled to have farmers Ellsworth and Smith also give their opinions. Newell was not only a farmer, but a technically trained real estate appraiser. There is no doubt he was an impressive witness. But Naegle, one of the witnesses for appellant, was not only a qualified real estate broker, but he was a farm owner participating in share crops with his renter. Groberg also was a witness for appellant. He was a qualified real estate broker and appraiser. He was also the operator of a farm near Idaho Falls. In addition to these,

Ruud himself, as owner, was permitted to give an opinion of fair market value based upon the highest and best use. It is notable that this figure of $299,810.00 was the highest given by anyone. Perhaps the jury considered this circumstance. In any event, the trial court had several grounds upon which to exclude the opinions of the final witnesses, any of which would have been well founded. The mere fact that he sustained the objection, made upon a technically erroneous ground, does not call for reversal. Appellant waived the error as noted.

Besides, the trial was fair and impartial. The jury was not swayed by passion and prejudice. They chose a figure supported by the testimony of one who was a farmer and experienced real estate appraiser. This was considerably higher than the government offer. It was the highest figure to which a government witness testified. Appellant may have hoped for a split between the highest government figure and the lowest opinion for the landowner, as many attorneys for landowners do. But the verdict was supported by substantial evidence [7] and there was no prejudice to appellant by the erroneous rulings.[8]

Affirmed.

POPE, Circuit Judge (dissenting).

We are all agreed that the ruling of the court refusing to permit the farmer witnesses to testify as to the value of the land was error. That it was prejudicial error cannot be doubted. For as anyone

6. The reliance of appellant on McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205, is misplaced. There the trial court, in a condemnation action, erroneously excluded all evidence adduced as to the highest and best use to which the land could be put if irrigation water were available. In the instant case, all witnesses except Smith and Ellsworth were permitted to testify freely to the highest and best use of the land in question.

7. " * * * the jury heard the conflicting testimony by qualified experts on both sides, and reached a finding which is supported by substantial evidence. -

Since the question of credibility is for the District Court and the award is within the range of the testimony, the award cannot be set aside on appeal." Simmonds v. United States, 9 Cir., 199 F.2d 305, 307. See also Love v. United States, 8 Cir., 141 F.2d 981, 982; Miller v. United States, 3 Cir., 137 F.2d 592, 594.

8. "On the hearing of any appeal * * * the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C.A. § 2111. See also Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A.

who has lived in a farming area knows, the average juror in such a locality is apt to have a higher regard for the views of a dirt farmer than for the opinions of those whose ideas of land values are accumulated in a swivel chair or by driving past a few ranches.

The suggestion that appellants waived their point or "lulled the trial court into inaction" by failing to hand the judge citations will not bear analysis. When the citations were mentioned the judge had made his ruling, it was final, and there was no reservation about it. The only thing discussed was a possible effort to get the judge to change his mind. No rule I have ever heard of requires a lawyer to furnish citations under such circumstances. A judge is presumed to know the law. Most records reviewed by this court fail to show whether the trial judge was furnished one or a dozen or any citations. His rulings are reviewed nevertheless. Furthermore, the judge mentioned the evening as the time to bring the citations. I do not know that counsel did not go to the judge's office or home that evening with citations. Whether he did or not is immaterial, but to expect the lawyer to file an affidavit that he had done so seems to me to require something unheard of. All this sounds to me like a suggestion that the trial court could say to appellant: "It is your fault for not making me change my mind."

Just as irrelevant, in my view, is the suggestion that there might have been a pre-trial hearing at which the number of opinion witnesses might have been limited. That was not done; no such order was made; that was not the basis for the ruling, and for this court in effect retroactively, and at this stage, to apply such a limitation to appellant, is highly unjust to this litigant.

Of course this was an extended trial. That such prejudicial and plain error should occur is unfortunate. But the only way this court can do its duty as an appellate court is to impose the legal consequences of error.