Clarence EVANS and Katherine Evans, Appellants,

v.

UNITED STATES of America, Appellee.

Chester PARKER, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 17417, 17418.

United States Court of Appeals Eighth Circuit.

Jan. 30, 1964.

Edward L. Vogeltanz, Ord, Neb., for appellants.

Raymond N. Zagone, Attorney, Lands Division, Dept. of Justice, Washington,

D. C., Ramsey Clark, Asst. Atty. Gen., Washington, D. C., Roger P. Marquis, Attorney, Dept. of Justice, Washington, D. C., and Theodore L. Richling, U. S. Atty., and Richard L. Edgerton, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

These are proceedings in condemnation brought by the United States of America to determine the just compensation to be paid for the taking of certain tracts of land belonging to the appellants and for its use in connection with the Sherman Feeder Canal and Arcadia Diversion Dam, Farwell Unit, Missouri River Basin Project. Tract No. 13, containing 15.67 acres, was part of a total of 370 acres of farm land owned by appellants Clarence and Katherine Evans. Tract No. 17, containing 38.08 acres, was part of a total of 160 acres owned by appellant Chester Parker. Pursuant to the Declaration of Taking Act, 46 Stat. 1421, 40 U.S.C.A. § 258a, the United States filed with the complaint an estimate of the just compensation for the taking of the tracts and deposited in the registry of the District Court the amount of such estimates, being $8,903.50 for Tract No. 13 and $5,984.80 for Tract No. 17.

The owners of Tract No. 13, Clarence and Katherine Evans, being dissatisfied with the estimated compensation deposited by the government, chose to have the amount of their damages fixed by a jury trial. On August 30, 1961, however, pursuant to order of court, they withdrew the sum of $7,567.97 from the amount deposited in the registry of the court. Upon trial the jury, by its verdict, fixed the just compensation for the taking of Tract No. 13 at $7,000. Judgment was entered accordingly and inasmuch as the amount withdrawn by the owners from the deposit exceeded the just compensation as fixed by the jury by $567.97, judgment was entered against the owners for such amount. The balance of the deposit was to be returned to the government and the judg-ment provided that the owners were entitled to no interest inasmuch as the funds on deposit had exceeded the jury award.

As to Tract No. 17, wherein the government had deposited as estimated compensation $5,984.80, the jury found the just compensation to be $5,200. The owner had made no withdrawal from the deposit. Accordingly the judgment provided that the owner was entitled to $5,200 thereof without interest and the excess was to be returned to the government.

Following the District Court's denial of motions for a new trial, the owners appealed to this court. Two grounds for reversal are urged: (1) That the amounts provided for by the jury's verdict as compensation for the lands taken are "absolutely inadequate" and "contrary to the evidence"; and (2) "The Court erred in sustaining the objection to the Offer of Proof of the amount of money received by the plaintiff's [government's] witness, Bossen, for 27.07 acres of land."

We think that Foster v. United States, 8 Cir., 1944, 145 F.2d 873, is decisive of appellants' first contention that the verdicts are inadequate. Therein this court, speaking through Judge Gardner, said at page 877 of 145 F.2d:

"It is finally urged that the court erred in not setting aside the verdicts because they were grossly inadequate. The government witnesses fixed the value of the Foster farm at from $21,625 to $25,000. Witnesses for the defendants, on the other hand, fixed its value at from $41,050 to $51,000. The jury determined the value at $31,365. As to the Buescher farm, government witnesses fixed the value from $13,500 to $19,100, while witnesses for the defendant fixed its value at from $33,625 to $39,025, and the jury determined the value at $21,250. *The value so determined by the jury was within the scope of the testimony, and hence, it is sustained by substantial evidence.* We do not pass upon the weight of

the evidence, and the trial court has denied defendant's motion for a new trial. In these circumstances, *the verdicts, being supported by substantial evidence, even though there may be a conflict in the evidence, must be sustained.* Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892; Love v. United States, supra [8 Cir., 141 F.2d 981]; O'Donnell v. United States, 8 Cir., 131 F.2d 882." (Emphasis supplied.)

Similarly, it was said in Love v. United States, 8 Cir., 1944, 141 F.2d 981, 982:

"Clearly the verdict was within the scope of the testimony. It can not be said, therefore, that it is not supported by substantial evidence. The record also discloses that the judge who heard all the testimony refused to grant a new trial. It is the law in the federal courts that verdicts based upon substantial evidence are conclusive of the facts on appeal. Under these circumstances we know of no rule which would authorize this court to hold that the verdict is inadequate and to reverse the judgment for that reason. Herencia v. Guzman, 219 U.S. 44, 31 S.Ct. 135, 55 L.Ed. 81; Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 895; O'Donnell v. United States, 8 Cir., 131 F.2d 882, 884."

In applying the rule of the above cases to the facts in the instant controversies, we point out that the valuation testimony may be summarized from the record as follows: Clarence Evans, A. H. Easterbrook and John L. Andersen testified in behalf of the owners. They testified as to the difference in the market value of the entire property involving Tract No. 13 before and after the taking which included severance damages to the remaining ownership. Their estimates of the difference were $17,600, $14,400 and $16,000 respectively.[1] The government's val-

uation witnesses were Floyd Bossen, who testified to a difference in value of $5,840.15, and Robert C. Walters, who believed the damages to be $5,660. The jury verdict was for $7,000, well within the range of the testimony.

As to Tract No. 17, the landowner's witnesses Parker and Andersen testified to damages of $9,650 and $8,500 respectively, while Bossen and Walters believed the difference in value to be $3,550.10 and $3,390 respectively. Thus the jury's award of $5,200 as to Tract 17 was also clearly within the scope of the evidence. The two awards, accordingly, may not be disturbed by this court as being allegedly inadequate. Solomon Dehydrating Co. v. Guyton, 8 Cir., 1961, 294 F.2d 439; Myra Foundation v. United States, 8 Cir., 1959, 267 F.2d 612; Foster v. United States, supra; and Love v. United States, supra. As was said in Stephens v. United States, 5 Cir., 1957, 235 F.2d 467, 471:

" * * * Since the award is within the range of the credited testimony, and the commission was not bound to accept the valuation of any particular witness, we may not reweigh the evidence in a de novo review or reverse merely because the commission found a valuation more closely based upon the testimony of the Government appraisers than upon that of the landowners' witnesses."

Appellants make much of the fact that the jury's awards were below the government's estimate of just compensation for the taking as represented by the government's deposit in the registry of the court of its estimates which were subject to withdrawal prior to trial at the option of the owners. The deposit of estimated compensation by the government is "no evidence of value" and has "no bearing whatsoever on value." Chapman v. United States, 10 Cir., 1948, 169 F.2d 641, 644. See, also, In re Unit-

---

1. Evans testified to additional damages of $957.70 for installation of an "I" beam to carry his irrigation pipes across the canal, $4,214.82 for additional pipe fittings and $420 for fencing of the canal if necessary.

ed States, 5 Cir., 1958, 257 F.2d 844, 849, certiorari denied, Certain Interests in Property, etc. v. United States, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 228; United States v. 9.85 Acres in Hampton, Virginia, E.D.Va., 1959, 183 F.Supp. 402, 404–405, affirmed sub nom. Tidewater Development & Sales Corp. v. United States, 4 Cir., 1960, 279 F.2d 890. Nor, for that matter, does the deposit of estimated compensation by the government establish a minimum for an award. This has been conclusively determined by the Supreme Court in United States v. Miller, 1943, 317 U.S. 369, 381, 382, 63 S.Ct. 276, 283, 284, 87 L.Ed. 336:

> "The purpose of the * * * [Declaration of Taking Act, 46 Stat. 1421, 40 U.S.C.A. §§ 258a–258e] is twofold. First, to give the Government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding. Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property. *The Act recognizes that there may be an error in the estimate, and appropriately provides that, if the judgment ultimately awarded shall be in excess of the amount deposited, the owner shall recover the excess with interest. But there is no correlative provision for repayment of any excess by the owner to the United States. The necessary result is, so the respondents say, that any sum paid them in excess of the jury's award is their property, which the United States may not recover.*

> "*All the provisions of the Act taken together require a contrary conclusion.* The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner; it is a payment 'on account of' compensation and not a final settlement of the amount due. To hold otherwise would defeat the policy of the statute and work injustice; would be to encourage federal officials to underestimate the value of the property with the result that the Government would be saddled with interest on a larger sum from date of taking to final award, and would be to deny the owner the immediate use of cash approximating the value of his land.

> \* \* \* \* \* \*

> "*\* \* \* Notwithstanding the fact that the court released the fund to the respondents, the parties were still before it and it did not lose control of the fund but retained jurisdiction to deal with its retention or repayment as justice might require.*" (Emphasis supplied.)

Appellants' second point is that the court erred in sustaining the government's objection to the offer of proof with reference to the amount of money received by government's witness Bossen for 27.07 acres of his land in connection with the same project. Bossen, according to the record, had testified as to before and after values regarding the taking of Tract No. 13. He was then interrogated as to the taking of Tract No. 17. On the basis of before and after taking valuations, his testimony indicated damage to the landowner of $3,550.10. He was interrogated on cross-examination. The record before us is as follows:

> "Q. Now, on the land that was taken by the Sherman canal across your farm there was no condemnation? A. No, sir.

> "Q. And that was a proposition of an agreement for fair compensation, wasn't it? A. Yes, sir.

> "Q. How many acres did they take on your land? A. 27.07, I believe.

> "Q. What was the compensation that you received for the same?

> "Objection sustained by court.

> "Offer of Proof.

> "Q. The landowner at this time offers to prove that this witness in a

give and take proposition, which would be considered a fair proposition and reasonable value, for 27 acres agreed upon together with the United States Government for the sum of $6,500.

"Objection sustained as to offer of proof."

■ The record does not indicate that appellants' counsel disclosed to the trial court the purpose of the offer of proof. If it was to establish value, it runs afoul of the general rule that evidence of prices paid by the government for the purchase through private negotiations of lands in connection with a project condemned or to be condemned is not generally admissible. Slattery Company v. United States, 5 Cir., 1956, 231 F.2d 37, 41:

"Appellee, on its part, cites many cases from this circuit and elsewhere, laying down the rule that 'The prices paid in settlement of condemnation proceedings or the sum paid by the condemnor for similar land, even if proceedings have not been begun, is inadmissible'. This rule, based upon the view that *such payments are in the nature of compromise to avoid the expense and uncertainty of litigation and are not fair indications of market value*, is the generally prevailing rule in this circuit and elsewhere. The only recognized exceptions to it are in cases where the fact that parties were condemnor and condemnee either was not known or had no influence because the sale was not in connection with, or in anticipation of, *condemnation proceedings.*" (Citing 18 Am.Jur., p. 996, "Eminent Domain", Sec. 352.) (Emphasis supplied.)

See, also, United States v. 13,255.53 Acres of Land, 3 Cir., 1946, 158 F.2d 874, 877; United States v. Foster, 8 Cir., 1942, 131 F.2d 3, 5, certiorari denied, 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138; United States ex rel. Tennessee Valley Authority v. Bailey, 5 Cir., 1940, 115 F.2d 433, 434. Appellants have not demonstrated and the record on appeal does not indicate that the instant case falls within any exception to the general rule.

■ It is claimed in this court, however, that the purpose of the offer was to show bias and prejudice on the part of the witness Bossen and to attack his credibility. Even if it could be found admissible for such purpose, the offer of proof was properly rejected as falling far short of its purpose. No attempt was made to show comparability between the taking of Bossen's 27.07 acres and the taking of Tract No. 17; that is, that the lands were similar in location, productivity, use, improvements and severance damage, or any of the other factors that go to make up the amount an owner should receive in money for the taking of a part of his farm unit. Absent such foundation, what Bossen received for the taking of his 27 acres had no bearing whatsoever upon Bossen's testimony with reference to the damages for the taking of Tract 17 unless there was some method of comparison. If, regardless of comparability, appellants' purpose was to show that the government grossly overpaid Bossen for the taking of his 27 acres so as to be in effect a buying of the witness in order to obtain prejudiced testimony regarding the value of other lands in connection with the same project, the offer, again, lacks proper disclosure and its rejection was not error.

■■ Similarly, we see no merit in the appellants' argument that the witness Robert C. Walters was not qualified to testify as to the value of the land before and after taking. Clearly, the fact that he was employed by the United States would not disqualify him *per se*. Kimball Laundry Co. v. United States, 8 Cir., 1948, 166 F.2d 856, 862. Further, the weight to be given the testimony of a witness is a question for the triers of the facts, whose determinations are conclusive on appeal, absent an abuse of discretion or a clear error of law, neither of which do we find here. Westborough Country Club v. Palmer, 8 Cir., 1953, 204 F.2d 143; Kimball Laundry Co. v. United States, supra. It is also noted that the record on appeal nowhere indicates that

the qualifications of the witnesses were attacked below or that the court was asked to strike the government's valuation evidence on the grounds that the government's witnesses were not qualified to testify to market value.

Finding no error in the record, these judgments are affirmed.